IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOUSTON COMMUNITY COLLEGE SYSTEM, | § § § | |
| Plaintiff, | § | |
| v. | § | C.A. No.: _____ |
| | § | |
| THE CITY OF HOUSTON, and CAROL HADDOCK, in her official capacity as ACTING DIRECTOR, CITY OF HOUSTON DEPARTMENT OF PUBLIC WORKS AND ENGINEERING, | § § § § § | |
| | § | |
| Defendants. | § | |

## HOUSTON COMMUNITY COLLEGE SYSTEM'S ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIONS

Houston Community College System (HCCS or the College) brings this action against the City of Houston and Carol Haddock, in her Official Capacity as Acting Director of the City of Houston Department of Public Works and Engineering, (collectively the City) as follows:

### JURISDICTION

1.       This is a civil action under 42 U.S.C § 1983 and § 1988 seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent, and for the purpose of, depriving HCCS of rights secured under the Constitution and laws of the United States.

2.       HCCS seeks a declaration of its rights pursuant to 28 U.S.C. §§ 2201(a) and 2202 to resolve an actual controversy within this Court's jurisdiction. This Court has

subject matter jurisdiction over the subject of this case pursuant to 28 U.S.C. § 1331 because HCCS seeks injunctive and other relief under 42 U.S.C. §§ 1983 and 1988 for the City's unconstitutional deprivation of rights guaranteed to HCCS under the United States Constitution.

3.     Specifically, HCCS has been a deprived of a property right without just compensation, in violation of the Fifth Amendment to the United States Constitution. State law does not provide an adequate or mandatory procedure for the taking that has occurred in this case.

4.     The City has, at all relevant times, acted under the color of state law, and does not retain governmental immunity for its unconstitutional actions or the relief requested herein. HCCS may properly employ the Court to restrain and enjoin the City's unconstitutional deprivation of HCCS' constitutional rights and to alleviate the harm caused by the City's appropriation of the College's property.

5.     Venue is proper in the Houston Division of the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400(a) as the City is located within the Houston Division of this District.

## PARTIES

6.     HCCS is a Texas junior college district which, as a matter of Texas law, is a public school district organized under the laws of the State of Texas, and a political subdivision of the State. Tex. Educ. Code § 130.122(f) (West 2002).

7.     The City of Houston is a municipality and political subdivision organized under the laws of the State of Texas, and a political subdivision of the State. It may be

served with process by serving Ms. Anna Russell, the City Secretary of the City of Houston at 900 Bagby, Public Level, Houston, Texas, 77002.

8.     Carol Haddock is the City of Houston's Acting Director, Department of Public Works and Engineering and maybe served in her official capacity with citation at 611 Walker Street, Houston, Texas, 77002.

## FACTS

9.     HCCS is a community college system that serves thousands of students and operates numerous college campuses and other educational facilities throughout the greater Houston area.

10.     In 2012, HCCS' Board of Trustees, having determined that additional educational facilities were necessary to serve its present and future students, ordered a bond election.

11.     In 2012, voters approved a $425,000,000 bond referendum for the construction and renovation of 14 educational facilities. This bond program is commonly known as HCCS' 2013 Capital Improvements Program (CIP).

12.     As HCCS proceeded with its CIP projects, the City would only issue construction permits with "soft holds." City officials advised HCCS that a "soft hold" means the City will not issue certificates of occupancy or allow utility connections until HCCS pays water and wastewater impact fees.

13.     One of the CIP projects currently under construction is the Felix Fraga Academic Campus, a STEM facility, located at 301 North Drennan Street, Houston, TX 77003.

3

14.     The Fraga Academic Campus is operating under a temporary certificate of occupancy and is limited on class capacity without a permanent certificate of occupancy. The temporary certificate of occupancy was issued on May 14, 2018. Upon opening, and receipt of certificate of occupancy, the Fraga Academic Campus will serve and offer instruction to 250-300 HCCS students.

15.     The City has refused to issue a permanent certificate of occupancy for the Fraga Academic Campus; instead only issuing a temporary certificate, conditioning issuance of a permanent certificate on HCCS' agreement to pay the City $47,617.89 in water and wastewater impact fees. *See* Exhibit A, attached. This represents only a portion of the total impact fees assessed by the City – $334,832.41 – on the following HCCS projects: Alief-Hayes Road Renovation and West Houston Institute, Brays Oaks Campus, Central South Campus Workforce Building, Coleman College Health Care Education Facility Expansion, Southeast Eastside Workforce and Student Center, Felix Fraga Academic Center, and Northline Multiuse Building and Parking.

16.     While the City "may enact or impose impact fees" on new development within its boundaries (*see* Tex. Loc. Gov't Code § 395.011(b)), its ability to assess impact fees is expressly limited by the Texas Legislature's decision to bar the City (or any other municipality), from assessing impact fees against a public school district without first obtaining the district's express contractual agreement to pay them. Specifically, the Texas Local Government Code provides that "[a] school district *is not required* to pay impact fees imposed under this chapter *unless the board of trustees consents* to the payment of the

fees by entering into a contract with the political subdivision that imposes the fees." Tex. Loc. Gov't Code § 395.022(b) (West 2015) (emphasis added).

17.     The Texas Education Code makes clear and proclaims what has always been true in Texas – a junior college district is one of many type of school districts in Texas: "Each junior college district heretofore or hereafter created pursuant to the laws of this state, is hereby declared to be, and constituted as, a school district, within the meaning of Article VII, section 3 of the Texas Constitution." Tex. Educ. Code § 130.122(f) (West 2002).

18.     On January 29, 2013, then-Texas Attorney General Greg Abbott, addressing the very issue that is the subject of the parties' current dispute, concluded that the term "school district" as used in Section 395.022(b) includes junior college districts. Tex. Att'y Gen. Op. GA-0984 (2013), *available at* 2013 WL 2996985. General Abbott's conclusion is consistent with case law holding that Texas junior colleges are school districts. *Alamo Cmty. Coll. Dist. v. Obayashi Corp.*, 980 S.W.2d 745 (Tex. 1998), *abrogated on other grounds by Gen. Svcs. Comm'n v. Little-Tex Insulation Co., Inc.,* 39 S.W.3d 591 (Tex. 2001); *Hander v. San Jacinto Junior Coll. Dist.*, 519 F.2d 273 (5th Cir. 1975); *Kacher v. Houston Cmty. Coll. Sys.*, 974 F. Supp. 615 (S.D. Tex. 1997) (Atlas, J.).

19.     HCCS has never contractually agreed to pay impact fees to the City. To the contrary, on June 16, 2016, HCCS' Board of Trustees, acting in a lawfully-called public meeting, passed a resolution stating that it did not agree, and would not agree, to pay impact fees. It additionally authorized HCCS' Chancellor, Dr. Caesar Maldonado, to pursue all remedies, both administrative and judicial, necessary to challenge any political subdivision

that conditions the provision of utility service, or issuance of permits, including but not limited to building and occupancy permits, on HCCS' agreement to pay impact fees. *See* Exhibit B, attached.

20.     Furthermore, HCCS, acting through legal counsel, appealed the City's unlawful decision to charge HCCS impact fees, to a City Adjudication Hearing Officer, Montecella Flaniken. After an evidentiary hearing, Hearing Officer Flaniken rejected the City's position and ruled in favor of HCCS, finding that – "Based upon applicable case law, the Texas Attorney General opinion, LGC 395.022 (b) and statutory evidence favoring junior colleges, I find that HCC is a 'school district'; and consequently, the City's water and wastewater impacts fees are not applicable to HCC." *See* Exhibit C, attached.

21.     Despite both the plain language of Texas statutory law that excuses HCCS from paying the City's assessed fees, and Hearing Officer Flaniken's decision upholding Texas law and ruling in HCCS' favor, the City has refused to relent. Since February of 2018, the undersigned has made more than a dozen written inquires asking whether the City would abide by Hearing Officer Flaniken's decision. *See* Exhibit D, attached. After initially reporting that Hearing Officer Flaniken's decision was "under review" by the City's Legal Department, the City has since ignored all inquiries as to its intentions.

22.     The only logical conclusion that can be drawn is that the City intends to press its erroneous, unlawful, and extortionate claim that HCCS is obligated to pay impact fees to force HCCS to yield and pay the City so that it can open the Fraga Academic Campus to its students.

6

23.     The City's ongoing refusal to unconditionally extend permits to HCCS, and the threat that it might withdraw the temporary certificate of occupancy, jeopardizes the timely opening of the Fraga Academic Campus which will negatively impact student instruction, subjecting HCCS, its students, and the public generally to unforeseen and incalculable damage, as well as cause harm to HCCS' reputation.

## DECLARATORY JUDGMENT

24.     Based on the facts set forth above, HCC is entitled to bring this suit for declaratory judgment to determine the relative rights and interests of HCCS and the City.

25.     HCCS alleges deprivations of rights secured by the Fifth and Fourteenth Amendments to the United States Constitution as protected by 42 U.S.C. § 1983. The City's conditioning of utility services, building permits, and certificates of occupancy upon HCCS' agreement to pay impact fees constitutes an unconstitutional taking, and otherwise violates HCCS' right to substantive due process. The City's actions are arbitrary and capacious and bear no rational basis to any legitimate exercise of government authority, and otherwise constitute an abuse of the City's statutory powers.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTIONS

26.     HCCS incorporates the allegations set forth above as the basis for this application for a temporary restraining order, preliminary injunction, and permanent injunctions.

27.     As described above, the City has denied (and continues to deny) HCCS unconditional permits for no other reason than HCCS's lawful decision to not voluntarily

7

pay water and wastewater impact fees. If the City is not enjoined from engaging in the wrongful conduct described above, HCCS will have no adequate remedy at law and will suffer irreparable injury that cannot be readily measured and cannot be remedied by a monetary judgment.  Because Texas law makes clear that HCCS is not obligated to pay the City's water and wastewater impact fees, as described above, HCCS has a probable right of recovery against the City and is therefore entitled to immediate injunctive relief to prohibit the City from continuing its unlawful conduct.

28.    HCCS seeks a declaration that the City's custom, practice and policies of denying HCCS utilities, building permits, and certificates of occupancy, unless it agrees to pay impact fees, are without legal basis and are arbitrary and capricious, violate the District's rights as secured by the Fifth and Fourteenth Amendments to the Unites States Constitution as secured by 42 U.S.C. § 1983, and otherwise interfere with HCCS' need and entitlement to construct school facilities. HCCS reasonably believes and avers that the City's unlawful conduct will continue unless immediately enjoined by order of this Court. Therefore, HCCS seeks the following injunctive relief:

      a.      A temporary restraining order and preliminary injunction prohibiting the City, its officers (including Acting Director of the City of Houston Public Works and Engineering Department, Carol Haddock), employees, agents, and any person acting in concert with the City from withdrawing, revoking, cancelling, or interfering with HCCS' use and enjoyment of the Felix Fraga Academic Campus under the temporary certificate of occupancy issued for the Felix Fraga Academic Campus;

      b.      A permanent prohibitory injunction enjoining the City, and its officers, employees, agents, and all those acting in concert with the City, from conditioning the provision of utility services, issuance of

building permits, and certificates of occupancy upon HCCS' agreement to pay impact fees; and

c.   A permanent mandatory injunction ordering Carol Haddock, Acting Director of the City of Houston Department of Public Works and Engineering, to immediately issue a permanent certificate of occupancy for the Felix Fraga Academic Campus.

29.   HCCS is willing and able to post bond; however, given that HCCS is a governmental entity pursuing this litigation in the public interest, the Court should either waive the requirement of a bond or require that HCCS post only a nominal sum as bond.

## COSTS AND ATTORNEYS' FEES

HCCS was required to retain the undersigned legal counsel and bring this action against the City to enforce its statutory and constitutional rights. HCCS is, therefore, entitled to recover its reasonable and necessary attorneys' fees as permitted by 42 U.S.C. § 1988 and its taxable costs of Court.

## CONCLUSION AND PRAYER

HCCS prays that the City of Houston and Carol Haddock, in her Official Capacity as Acting Director of the City of Houston Department of Public Works and Engineering, be cited to appear and answer this complaint, and, upon final trial, that the Court:

1.   Decree that the City of Houston cannot lawfully condition the issuance of a permanent certificate of occupancy upon HCCS' agreement to pay impact fees to the City;

2.   Order Carol Haddock, Acting Director of the City of Houston Department of Public Works and Engineering, to immediately issue a permanent certificate of occupancy for the Felix Fraga Academic Campus;

3.   Permanently enjoin the City of Houston, its officers, employees, agents, and all those acting in concert with the City, including the City's Director of Public Works and Engineering (currently Carol Haddock, serving as the Acting Director), from conditioning the provision of utility services and

issuance of building permits and certificates of occupancy upon HCCS' agreement to pay impact fees;

4.      Award HCCS, pursuant to 42 U.S.C. § 1988, the reasonable and necessary attorneys' fees and taxable costs of Court it has incurred to bring and prosecute this legal action; and

5.      Award HCCS all such other and further relief to which it may show itself justly entitled.


                              Respectfully submitted,

                              ROGERS, MORRIS & GROVER, LLP

                              _____
                              RICHARD A. MORRIS
                              State Bar No. 14497750
                              Federal Id. No. 15004
                              Email:  rmorris@rmgllp.com
                              JONATHAN G. BRUSH
                              State Bar No. 24045576
                              Federal Id. No. 619970
                              Email:  jbrush@rmgllp.com
                              5718 Westheimer Rd., Suite 1200
                              Houston, Texas 77057
                              Telephone:   713-960-6000
                              Facsimile:     713-960-6025

                              ATTORNEYS FOR HOUSTON
                              COMMUNITY COLLEGE SYSTEM